

Villanova University School of Law
Villanova University School of Law Digital Repository

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-7-2004

# Trimi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4041

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Trimi v. Atty Gen USA" (2004). *2004 Decisions.* Paper 859.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/859

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 02-4041 and 03-3126
_____

LIDA TRIMI,

Petitioner in No. 02-4041

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent

_____

LIDA TRIMI;
KLODIAN TRIMI,

Petitioners in No. 03-3126

v.

JOHN ASHCROFT,
Attorney General of the United States,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Board Nos. A78-212-724 and A78-212-725)
_____

Submitted Under Third Circuit LAR 34.1(a)
April 1, 2004

Before:  ALITO, FISHER and ALDISERT, Circuit Judges.

(Filed : April 7, 2004 )

_____

OPINION OF THE COURT
_____

FISHER, Circuit Judge.

Lida Trimi and her eleven (11)-year old son Klodian are both natives and citizens of Albania.  They seek review of a final order of removal issued by the Board of Immigration Appeals ("BIA").  The BIA affirmed without opinion the Immigration Judge's ("IJ") May 31, 2001 denial of their application for asylum and withholding of removal under the Immigration and Nationality Act (the "Act"), protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention"), and application for voluntary departure.  We have jurisdiction to review these consolidated petitions pursuant to 8 U.S.C. § 1252(b).  After consideration of the record, we will deny their petitions for review.

I.  Background

Lida and Klodian Trimi fled Albania and arrived in the United States on September 24, 1999.  They applied for asylum on February 5, 2000.  On March 31, 2000, the Immigration and Naturalization Service ("INS")[1] commenced removal proceedings by

_____

[1]The INS ceased to exist and its functions were transferred to the Department of Homeland Security, Bureau of Immigration and Customs Enforcement effective March 1,

2

issuing a Notice to Appear charging them for remaining in the United States beyond the expiration of their visitor's visas. They admitted the allegations in the Notice to Appear and conceded removability. Lida Trimi then applied for asylum and withholding of removal, protection under the Convention, and alternatively for voluntary departure for herself and Klodian.

The IJ denied their applications for asylum and withholding of removal under the Act, requested relief under the Convention, and ordered them removed to Albania. The BIA affirmed the IJ's decision without opinion on October 4, 2002. On November 1, 2002, the Trimis simultaneously filed a Petition for Review with this Court and a Motion to Reconsider with the BIA, which the BIA denied. Trimi then filed a Petition for Review of the BIA's denial of the Motion to Reconsider and moved to consolidate the Petitions, with the latter motion being granted.

Lida Trimi claims and the IJ found that she suffered past persecution under the former communist Albanian government given her anti-communist history. That finding was premised on Lida Trimi's testimony that her family was interned and became forced laborers at the hands of the communist regime. The finding of past persecution created a regulatory presumption of a well-founded fear of future persecution. But the IJ also found that the INS effectively rebutted that presumption through state department country reports. Those reports reflected fundamentally changed country conditions since the

---

2003. *See* Homeland Security Act, 116 Stat. 2135, Pub. L. 107-296 § 441 (2002).

3

overthrow of the communist regime. The IJ also concluded that the Trimis failed to produce evidence of torture at the hands of the post-communist government or any probability of future torture.

The Trimis complain that the IJ erred in finding that she can safely return to Albania given changed country conditions since the decline of the communist regime. They also contend that the country report, standing alone, was not sufficient for the INS to meet its substantial burden of proving a fundamental change in circumstances to negate the presumption of a well-founded fear of future persecution. A review of the facts presented at the immigration hearing relevant to this appeal will inform our discussion.[2]

In 1991, Lida and her husband Irfan Trimi became members of the anti-communist democratic party. Irfan Trimi participated in a democratic party demonstration and was arrested and detained for five (5) days. They both participated in the democratic party's campaign to defeat the communist government. On March 22, 1992, the democratic party won the election unseating the communist regime.

During the reign of the democratic party, Lida Trimi became an active member of an association supporting those politically persecuted by the former communist regime. In addition, her husband participated in a group hunger strike for the return of property taken during the communist regime and was detained by the police for forty-eight (48)

---

[2]Because the IJ's finding that Lida Trimi suffered past persecution under the communist regime is not challenged, we do not recite the facts relevant to that finding as they are not necessary for the disposition of these petitions.

4

hours.  Since that detention, Irfan Trimi was concerned for the welfare of his family.  At the time of the June 29, 1997 election (where the socialist party ultimately prevailed), socialist party members visited the Trimi's home and threatened them with harm should they fail to vote for the socialist party.  On the morning of the election, the Trimis received a note under their door threatening the kidnapping of Klodian should they fail to vote socialist.  The police offered no assistance in responding to the threats. In light of this, in September 1997 the Trimi family went to Greece on a three (3) month visa but remained for one year out of fear of returning to Albania.  They ultimately returned to Prenjas when they were unable to legally remain in Greece.

Upon their return to Prenjas, the police detained Irfan Trimi for five hours questioning his activities on behalf of the association of the politically persecuted.  This instilled fear causing them to move to Gramsh, Albania, where they believe they were under surveillance by the socialist party.  Based on the foregoing, in September 1999 Lida Trimi departed for the United States with her son Klodian leaving behind her husband Irfan and their elder son Edison.

## II.  Jurisdiction and Standard of Review

We have jurisdiction to review the final order of removal pursuant to 8 U.S.C. § 1252.  The final order generally is the order of the BIA.  *Gao v. Ashcroft*, 299 F.2d 266, 271 (3d Cir. 2002).  Where the BIA either defers to or adopts the opinion of the IJ, we review the IJ's decision as if it were the decision of the BIA.  *Id.*  Where, as here, the BIA

5

(under the Attorney General's streamlining regulations[3]) affirms without opinion the findings of the IJ, we review the IJ's opinion and scrutinize its reasoning. *Dia v. Ashcroft*, 353 F.2d 228 (3d Cir. 2003) (*en banc*).

We review the IJ's findings of fact under the substantial evidence standard. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). The IJ's findings must be upheld unless the evidence compels a contrary conclusion. *Id.*

## III.  Discussion

The Act authorizes the Attorney General in his discretion to grant asylum to a deportable alien who is deemed to be a "refugee" within the meaning of section 1101(a)(42)(A) of the Act.  8 U.S.C. § 1158(b)(1) (2003).  That section defines "refugee" as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and who is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion ....

---

[3]The streamlining regulations permit the BIA to affirm without opinion the decision of the IJ.  8 C.F.R. § 3.1(a)(7) (2003).  An affirmance without opinion approves the IJ's decision and signifies that any errors in the decision were harmless or nonmaterial.  8 C.F.R. § 3.1(a)(7)(iii) (2003).

8 U.S.C. § 1101(a)(42)(A). An asylum applicant who establishes past persecution has a presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1)(i). But that presumption can be rebutted if the INS establishes by a preponderance of the evidence that there has been a fundamental change in circumstances so that the applicant no longer has a well-founded fear or can safely return to a different part of the country. *Mulanga v. Ashcroft*, 349 F.3d 123, 132 (3d Cir. 2003); 8 C.F.R. § 208.13(b)(1)(i)(A) and (B).

Well-founded fear for asylum purposes involves both a subjectively genuine fear of persecution and an objectively reasonable possibility of persecution. *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003). The subjective prong requires a showing that the fear is genuine while the objective prong requires ascertaining whether a reasonable person in the alien's circumstances would fear persecution if returned to the country in question. *Id.*

The IJ reviewed both the subjective and the objective components of Lida Trimi's claim that supporters of the Albanian socialist party threatened to kidnap Klodian should they not vote for the socialist party in the June 1997 election. In finding no objective support for Trimi's claim of future persecution, the IJ relied on a U.S. Department of State country report indicating that Albanian asylum applicants frequently seek to incorrectly portray the Albanian socialist government as communist and as actively targeting supporters of its opposition. The IJ found that crime was the more likely

7

explanation for any harm or the threat of harm to the Trimis than was political opposition. The country report revealed that both organized and amateur crime are flourishing amidst poverty and weakened forces attempting to maintain public order. There was no objective evidence to support a finding that the threatened kidnapping of Klodian was motivated by a desire to persecute Lida Trimi because of her political views.

The IJ also doubted the veracity of the subjective component of the Trimis' claim. Although Lida Trimi's asylum application recounted the home visit paid by socialist party members prior to the June 1997 election, she failed to mention the fact most relevant for asylum -- that they threatened to kidnap her son. The first mention of the threatened kidnapping was in Lida Trimi's affidavit in support of her asylum claim where she related her receipt of a letter on election day stating that her younger son would be kidnapped should she fail to vote socialist. Her inability to recite the alleged kidnapping consistently caused the IJ to conclude that she had attempted to couch a criminal matter in political terms in order to qualify for asylum.

Despite finding that Lida Trimi suffered past persecution under the communist regime, the IJ was not persuaded that Trimi faced future persecution upon returning to Albania. There was no evidence that she had ever been persecuted at the hands of the post-communist governments. Consequently, neither Lida nor Klodian Trimi qualified for "refugee" status and their asylum claims were denied. Their withholding of removal

claim and request for Convention relief necessarily fail given the higher burdens of proof applicable to those claims. *Zubeda v. Ashcroft*, 333 F.3d 463, 469-70 (3d Cir. 2003).

The IJ's reliance on the country reports for information on the political climate was appropriate. *Xie v. Ashcroft*, 369 F.3d 239, 244 (3d Cir. 2004) (citing *Zubeda*, 333 F.3d at 477-78) (country reports are the most appropriate and perhaps the best resource for information on political situations in foreign nations) (internal quotations and citations omitted); *Kayembe v. Ashcroft*, 334 F.3d 231, 235 (3d Cir. 2001) (country report can constitute substantial evidence to support finding that the INS rebutted presumption of future persecution) (internal quotations and citations omitted).

Even if the Trimis were correct in their assertion that the country reports standing alone were insufficient to rebut the presumption of future persecution, the IJ's decision also took into account the credibility of Trimi's testimony that she feared persecution at the hands of the now ruling socialist party. The IJ determined that the lack of consistency in Lida Trimi's recitation in her application, affidavit and testimony of her encounters with the socialist party caused doubt as to whether her fear of future persecution was genuine. Rather, the IJ found on the record presented that Lida Trimi attempted to couch a criminal matter in political terms in order to qualify for asylum.

Based on the foregoing, we find that substantial evidence supports the IJ's finding that Trimi did not establish a well-founded fear of future persecution or a likelihood of

9

future torture in Albania based upon political opinion. The consolidated Petitions for

Review are denied.

_____